SUSAN M. CHEHARDY, Chief Judge.
12Pefendant, Melvin Polly, appeals from his conviction and sentence for incest. For the reasons that follow, we affirm.
PROCEDURAL HISTORY
On June 30, 2014, the Jefferson Parish District Attorney filed a bill of information charging defendant'with one count of incest, a violation of La. R.S. 14:7s.[1] Defendant was arraigned and entered a plea’of not guilty. On March 4, 2015, defendant waived his right to trial by jury. Following a bench trial on March 10, 2015,[2] the district court found defendant guilty as charged.
On April 8, 2015, defendant appeared before the court for sentencing. Prior to imposition of sentence, defense counsel orally moved for a new trial on the basis that La. R.S. 14:78 is unconstitutional. The court orally denied the motion and |asentenced defendant to eight years imprisonment at hard labor and imposed a five-hundred-dollar fíne. Defendant’s appeal timely followed.
FACTS
The victim in this case, N.M.,[3] is the half-sister of defendant: they share the same father.[4] N.M. has always referred to defendant as her “big brother,” who is nearly ten years older than N.M.;[5] and defendant has always referred to N.M. as his sister. At the age of four, N.M. went to live with her paternal aunt, with whom defendant was also residing at the time. Then, at the age of six, N.M. moved' to California and returned' to Louisiana at the age of nineteen. Except for a four-year hiatus in Texas as a result of Hurricane Katrina, she has since remained in Louisiana, Prior to the incident at issue, which occurred in 2014, N.M. had seen defendant twice since returning'back from California: in 1998 and 2012;
On Sunday, May 11, 2014, N.M. was visiting family for Mother’s Day. Defendant was there too.' As the day wound down, N.M. and defendant planned to go to a bar within walking distance of N.M.’s home in Gretna, where she' resided with another half-brother, T.O. N.M. and defendant proceeded to the bar; and around midnight, N.M. gave her house keys to defendant, who was ready to leave. She told him to sleep on her sofa.. When N.M. returned home a couple of hours later, she found defendant asleep on her sofa, which is located in her. bedroom. T.O. was asleep in another bedroom. N.M. could not locate her tablet and noticed the curtains on her window were askew, leading her to suspect a burglary may have occurred, while no .one was home. N.M. *894 called the Gretna Police Department. Officers arrived to' the scene, could not locate her tablet, and left.
14After the officers departed, N.M. and defendant sat on .the sofa and talked for a while, “catching up.” Defendant “consoled” N.M. as she described all the “things [she] went through growing up.” N.M. eventually retired to her bed and went to sleep. She later woke up with defendant “behind” her with his penis inside her vagina. After a moment of frozen disbelief, N.M. jumped up, ran to T.O.’s bedroom, and told him that defendant had just “raped” her. Over defendant’s protestations, she called the police, who reported to N.M.’s residence for the second time that night. After speaking with the officers, N.M. was transported to the hospital where a sexual assault kit was performed.
Defendant was advised of his Miranda[6] rights and transported to the Gretna Police Department, where he met with Detective Nicholas Arabie. Detective Arabie again advised defendant of his rights, which defendant indicated he understood and waived. He agreed to give a statement. He explained that N.M. is his half-sister. He did not deny that they had sexual intercourse, but explained that she initiated the sexual contact. Defendant also testified at trial. He stated that at the time of the incident he was unsure of his relation to N.M. and that she “made the first move.”
The results of the sexual assault kit revealed the presence of spermatozoa on both the cervical and vaginal swabs. The DNA profile obtained from the spermatozoa was consistent with defendant’s DNA profile. In fact, the probability that the DNA profile on the cervical swab originated from an individual other than defendant is one in more than one hundred billion.
DISCUSSION
In his sole assignment of error on appeal, defendant argues that the district court erred in denying his motion for new trial in which he argued that the incest | .¡¡statute, La. R.S. 14:78, is unconstitutional. The ruling on a motion for new trial will -not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Richoux, 11-1112 (La.App. 5 Cir. 9/11/12), 101 So.3d 483, 490, writ denied, 12-2215 (La.4/1/13), 110 So.3d 139.
Defense counsel raised the constitutional challenge in an oral motion for new trial. La.C.Cr.P. art. 852 expressly mandates that “[a] motion for new trial shall be in writing[.]” Due to the failure to submit this motion in writing, the district court did not abuse its discretion in denying defendant’s motion for new trial. See State v. Carter, 13-94 (La.App. 5 Cir. 10/30/13), 128 So.3d 1108, 1118, writ denied, 13-2701 (La.4/25/14), 138 So.3d 644; Richoux, supra.
This failure to reduce the motion to writing also constitutes a defect of the constitutional challenge itself. While there is no single procedure for attacking the constitutionality of a statute, the Louisiana Supreme Court has held that in order to properly confect a constitutional challenge, a party must raise the issue in the trial court in a pleading asserting the grounds for the alleged unconstitutionality. See State v. Hatton, 985 So.2d 709, 719-21 (La.7/1/08). This affords interested parties sufficient time to brief and prepare arguments defending the constitutionality of the challenged statute. Id. at 719. The opportunity to fully brief and argue the constitutional issue provides the trial court with thoughtful and complete arguments *895 and furnishes reviewing courts with an adequate record upon which to consider the issue. Id.
Defense counsel’s constitutional challenge consisted in its entirety of the following oral argument:
Prior to sentencing, I would like to make an oral motion for a new trial based on the fact that the incest statute as it reads on the grounds that it’s unconstitutional in that it treats consensual sex differently than non-consensual sex and that that severely discriminates against the person charged with this crime.
|fiThe State responded: “I believe the statute clearly meets the rational basis test.” The court then denied defendant’s motion.
Defense counsel’s brief oral argument did not afford interested parties {e.g., the attorney general) sufficient time to brief and prepare arguments defending the constitutionality of the challenged statute, nor did it provide the court with thoughtful and complete arguments on the issue. For these reasons, the district court did not abuse its discretion in denying defendant’s motion for new trial.
This assignment of error is without merit.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990). Upon review, we find no errors patent requiring corrective action.
DECREE
For the foregoing reasons, defendant’s conviction and sentence are affirmed.

AFFIRMED

. The Legislature repealed La. R.S. 14:78 by Acts 2014, No. 177, § 2, effective August 1, 2014 and Acts 2014, No, 602, § 7, effective June 12, 2014. The conduct comprising the offense of incest was incorporated into the offense of crime against nature under La. R.S. 14:89.

. Defendant waived his right to a jury trial within forty-live days of trial in contravention of La. Const. Art, 1, § 17(A). Nonetheless, the right to a jury trial may be waived , within forty-five days of trial with the consent of the district attorney. See La.C.Cr.P. art. 780(C), At the hearing on March 4, 2015, in which the district court accepted defendant’s waiver of his right to a jury trial, the Assistant District Attorney agreed to a trial date of March 10, 2015.

. In the interest of protecting minor victims and victims of sexual offenses as set forth in La. R.S. 46:1844(W)(3), this opinion uses only the initials to identify the victim and any defendant or witness whose name can lead to the victim's identity..

. DNA analysis determined there is a 99.9% probability that defendant and N.M. are half-siblings.

. N.M.’s date of birth is March 8, 1974, Defendant's date of birth is May 29, 1964.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L,Ed.2d 694 (1966).