# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 23-334

**STATE OF LOUISIANA**

**VERSUS**

**BRANDON J. SMITH**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 19-K-2066-B
HONORABLE ADAM GERARD CASWELL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JONATHAN W. PERRY
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Van H. Kyzar, Jonathan W. Perry, and Charles G. Fitzgerald, Judges.

**AFFIRMED.**

**Brooke Alexander**
**Manasseh, Gill, Knipe & Belanger, P.L.C.**
**8075 Jefferson Highway**
**Baton Rouge, Louisiana  70809**
**(225) 383-9703**
**COUNSEL FOR DEFENDANT/APPELLANT:**
        **Brandon J. Smith**


**Chad Pitre**
**District Attorney, Twenty-Seventh Judicial District**
**Kathleen E. Ryan**
**Assistant District Attorney**
**Post Office Drawer 1968**
**Opelousas, Louisiana  70571**
**(337) 948-0551**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**PERRY, Judge.**

This appeal presents the issue of whether the limited time allowed to defendant to consult with and be advised by trial counsel in deciding whether to move for a mistrial violated Defendant's right to assistance of counsel. For the following reasons, we affirm Defendant's convictions and sentences.

## FACTS

In February 2019, Brandon J. Smith ("Defendant") and Devin Asiegbu ("Ms. Asiegbu") had been dating for several months. Defendant lived at Ms. Asiegbu's house with her and her children in St. Landry Parish.

On February 7, 2019, Defendant allegedly became enraged with Ms. Asiegbu when she caused them to miss an appointment at the bank and, in response, he beat her over the course of several hours with his fists, his feet, a curtain rod, and a handgun. Defendant and Ms. Asiegbu left in her vehicle after bandaging her bleeding leg. As Defendant drove the vehicle to Lafayette Parish, he pulled the vehicle over to beat Ms. Asiegbu with his fists and handgun. Defendant also stabbed Ms. Asiegbu in her thigh with a pocketknife and cut her hair. When Defendant pulled the vehicle over and exited the vehicle, Ms. Asiegbu got into the driver's seat, drove away, and called emergency services. Officer Cody Louviere ("Officer Louviere") with the Lafayette Police Department was conducting a traffic stop in a nearby parking lot. Ms. Asiegbu pulled into the parking lot and told Officer Louviere that Defendant had attacked her. Officer Louviere turned the case over to the St. Landry Parish Sheriff's Office when he realized the incident primarily occurred in St. Landry Parish.

## PROCEDURAL HISTORY

On August 7, 2019, the State of Louisiana ("State"), via the Twenty-Seventh Judicial District Attorney's Office, charged Defendant by bill of information with

second degree kidnapping (count one), in violation of La.R.S. 14:44.1; aggravated assault with a firearm (count two), in violation of La.R.S. 14:37.4; and aggravated second degree battery (count three), in violation of La.R.S. 14:34.7. The bill of information was amended on June 20, 2022, to include possession of a firearm by a convicted felon (count four), in violation of La.R.S. 14:95.1. On September 28, 2022, a twelve-person jury unanimously found Defendant guilty on counts two, three, and four, but the jury failed to reach a unanimous verdict on count one.

Thereafter, the trial court denied Defendant's motion for judgment of acquittal and motion for new trial following a contradictory hearing held on October 13, 2022. Immediately following the trial court's denial of these motions, Defendant was sentenced to ten years at hard labor for aggravated assault with a firearm (count two); fifteen years at hard labor for aggravated second degree battery (count three); and twenty years without the benefit of parole, probation, or suspension of sentence for possession of a firearm by a convicted felon (count four). The trial court ordered the sentences to run concurrently with one another and designated his convictions for aggravated second degree battery and aggravated assault with a firearm as crimes of violence. On January 18, 2023, the trial court granted Defendant's motion for appeal.

### APPELLANT'S ASSIGNMENTS OF ERROR

Defendant is now before this court asserting two assignments of error:

1. The trial court erred when it ordered the defendant to decide whether to move for a mistrial or proceed with trial without allowing the defendant adequate time to consult with and be advised by counsel prior to the decision.

2. The trial court erred when it denied the defendant's Motion for New Trial.

## APPELLANT'S ARGUMENT

Defendant argues his right to assistance of counsel was violated when the trial court limited his time for him to consult with and be advised by his trial counsel concerning the State's late disclosure of evidence. Defendant alleges he was forced to make a decision and not given sufficient time during trial for him to discuss with his attorney about whether or not to move for a mistrial. Thus, he contends the trial court's failure to allow him the opportunity to consult with his attorney resulted in a violation of his Sixth Amendment right to assistance of counsel.

## APPELLEE'S POSITION

The State denies Defendant was deprived of his right to assistance of counsel by the trial court. The State contends that Defendant, in fact, benefited from the discovery of evidence which corroborated Ms. Asiegbu's testimony, and the fact that the evidence was not admitted during trial.

## DISCUSSION

### *Errors Patent*

Louisiana Code of Criminal Procedure Article 920 mandates this court review all criminal records for errors "discoverable by a mere inspection of the pleadings and proceedings." After reviewing the record, we note there are three errors patent, but these errors require no corrective action by this court as explained below.

The first two errors involve Defendant's sentence for conviction for possession of a firearm by a convicted felon. The penalty provision for possession of a firearm by a convicted felon requires the sentence to be imposed at hard labor and requires imposition of a fine of not less than one thousand dollars nor more than five thousand dollars. La.R.S. 14:95.1. The trial court failed to impose the sentence

3

for possession of a firearm by a convicted felon at hard labor[1] and failed to impose the mandatory fine, rendering Defendant's sentence for possession of a firearm by a convicted felon illegally lenient. Although the authority is granted and discretionary under La.Code Crim.P. art. 882(A), this court will not consider an illegally lenient sentence unless it is an error raised on appeal. *State v. Charles*, 20-498 (La.App. 3 Cir. 5/5/21), 318 So.3d 356; *State v. Aguillard*, 17-798 (La.App. 3 Cir. 4/11/18), 242 So.3d 765, *writ denied*, 18-1207 (La. 3/6/19), 266 So.3d 897. *See also State v. Brown*, 19-771 (La. 10/14/20), 302 So.3d 1109 (supreme court found the court of appeal erred in vacating an illegally lenient sentence absent any complaint by the State).

The third error concerns the trial court's imposition of Defendant's sentence immediately after the denial of his motions for new trial and post-verdict judgment of acquittal. Louisiana Code of Criminal Procedure Article 873 provides that "[i]f a motion for new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled[,]" but that "[i]f the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately."

At the beginning of the sentencing hearing, the trial court noted that the next matter before it was Defendant's sentencing. The trial court then noted that defense counsel had filed some motions that same morning. Defense counsel explained that he had filed a motion for post-verdict judgment of acquittal as well as a motion for new trial. After hearing arguments by counsel, the trial court denied both motions. The trial court then stated, "Let's move on to sentencing" and asked if anyone wished

---

[1] The minute entry indicates the sentence imposed for possession of a firearm by a convicted felon is to be served at hard labor; however, the sentencing transcript does not so indicate. In the event of a conflict, the sentencing transcript prevails. *State v. Williams*, 15-498 (La.App. 3 Cir. 12/9/15), 181 So.3d 857, *writ denied*, 16-26 (La. 1/13/17), 215 So.3d 242.

4

to present evidence or argument prior to sentencing. After the State responded that the victim was out of state, the trial court asked if the defense was presenting any evidence with regard to sentencing. Defense counsel responded, "No, Your Honor." After counsel presented arguments, the trial court rendered Defendant's sentence.

While a defendant may expressly waive the statutory delay, "[a]n implicit waiver . . . runs afoul of the plain language of Art. 873[.]" *State v. Kisack*, 16-797, p. 7 (La. 10/18/17), 236 So.3d 1201, 1205, *cert. denied*, ___ U.S. ___, 138 S.Ct. 1175 (2018). Here, we find there was no explicit waiver of the delay following the denial of Defendant's motions for new trial and post-verdict judgment of acquittal.[2] "Nonetheless, an error in failing to observe the statutory sentencing delay may still be found harmless." *Id.* at 1205-06.

In *State v. Griffin*, 21-452, pp. 4-5 (La.App. 3 Cir. 3/2/22), 351 So.3d 385, 388 (footnote omitted), *writ denied*, 22-600 (La. 6/1/22), 338 So.3d 496, this court recently stated the following about the harmless error analysis after *Kisack*:

> Prior to the decision in *Kisack*, errors in failing to observe Article 873's delay were found harmless when "a mandatory life sentence was imposed or when the defendant did not challenge his sentence on appeal and did not claim prejudice due to the lack of the delay." *State v. Holden*, 19-867, p. 8 (La.App. 3 Cir. 7/15/20), 304 So.3d 520, 524, *writ denied*, 20-1016 (La. 2/9/21), 310 So.3d 174. Since *Kisack*, courts have continued to find harmless error where a mandatory life sentence is imposed or when the defendant does not challenge his sentence on appeal and does not claim prejudice due to the lack of the delay. *State v. Chester*, 19-363 (La.App. 5 Cir. 2/3/21), 314 So.3d 914, *writ denied*, 21-350 (La. 6/8/21), 317 So.3d 321; *State v. Samuel*, 19-408 (La.App. 3 Cir. 2/5/20), 291 So.3d 256, *writ denied*, 20-398 (La. 7/24/20), 299 So.3d 77 (the court also found an express waiver); *State v. Stafford*, 20-299 (La.App. 1 Cir. 2/22/21), 321 So.3d 965 (the court also found an implicit waiver); and *State v. Brown*, 20-150 (La.App. 1 Cir. 2/19/21), 2021 WL 650816 (unpublished opinion), *writ denied*, 21-458 (La. 6/1/21), 316 So.3d 835.

---

[2] Although the minutes in this case indicate that Defendant "waived sentencing delays[,]" our review of the record reveals the transcript makes no indication of a waiver. "Where the transcript and the minutes conflict, the transcript prevails." *Williams*, 181 So.3d at 861 (citing *State v. Wommack*, 00-137 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62).

*See also State v. Worley*, 21-688 (La.App. 3 Cir. 8/3/22), 344 So.3d 757, *writ denied*, 22-1381 (La. 12/20/22), 352 So.3d 86.

In the present case, Defendant neither challenges his sentences nor claims he was prejudiced by the lack of a delay. Thus, we find any error in the trial court's failure to abide by the mandatory sentencing delay set forth in La.Code Crim.P. art. 873 was harmless.

<u>*Assignment of Error No. 1*</u>

In his first assignment of error, Defendant argues: "The trial court erred when it ordered the defendant to decide whether to move for a mistrial or proceed with trial without allowing the defendant adequate time to consult with and be advised by counsel prior to the decision." According to Defendant, the trial court's failure to allow him the opportunity to consult with his attorney resulted in a violation of his Sixth Amendment right to assistance of counsel.

Defendant's trial commenced on September 27, 2022. On the second day of the trial, the trial court recessed for an hour lunch break. During the recess, the State disclosed evidence to defense counsel which it believed to be inculpatory. The trial court discussed the late disclosure on the record and outside the presence of the jury. The State indicated that "right before the noon break," while Ms. Asiegbu was on cross-examination, law enforcement provided it with a manilla folder containing a list of physical evidence. The evidence list included: two paper towels with possible blood; cotton swabs from the victim; cotton swabs from the nine millimeter cartridge casing that was collected; cotton swabs from the center console of the car; two LG phones collected from the car; and a LG fanny pack. According to the State, these were "very important items" to bolster the State's case and were believed to be inculpatory. Defense counsel argued that Defendant was "really between a rock and

6

a hard place," and said that he had "never been under this much pressure trying to advise a client[.]"

The following colloquy ensued:

> **MR. WILLIS [DEFENSE COUNSEL]**: But it still-- because now we're confined to our theory based on what we have now, and we could've [gone] back to the drawing board. We . . . can assume that this is all bad for Mr. Smith. We don't know that for sure, and I definitely can't say that on the record without having any assessment of all these items, but Your Honor, Mr. Smith is moving forward.
>
> **THE COURT**: You are free to move for a mistrial.
>
> **MR. WILLIS**: And he is making a decision based on the intensity of the moment, trial waiting, the ramifications of this evidence. He's making a decision to move forward, but I am making a record, and I would like to keep the note of evidence open to submit this. . . .
>
> . . . .
>
> **THE COURT**: The -- what I want to make clear . . . right now is if you believe your client is prejudice[d] with going forward, you need to move for a mistrial.
>
> **MR. WILLIS**: I can't say that, Judge. I believe it's in his best interest to move forward with the trial.
>
> **THE COURT**: Okay. I just want the record to be clear that if you move for a mistrial, based upon what has happened, I would grant it, and I'm telling you that because I don't want that to be an issue later that, "I didn't think he would grant it, so I didn't move for it." No, no, no. I want you to know right now, if you move for a mistrial, you'll get it based upon the fact that you don't know whether this evidence is harmful or not. So, I don't want that to be a reason after we're done for, "Well if I would've known, I would've." I want the record to be clear.
>
> **MR. WILLIS**: Your Honor, I had an opportunity to speak to my client about this issue. I would like the court to address Mr. Smith to confirm that a conversation was had involving Mr. Smith and myself that this occurred. He's [been] advised of what transpired, what his rights are, and his decision is to move forward with this trial.

In addressing Defendant, the trial court asked him to confirm that defense counsel had discussed "everything that he just said" and that Defendant made the decision to proceed with trial. Defendant responded:

**THE DEFENDANT**:  I made the decision to what?

**THE COURT**:  To go forward with the trial?

**THE DEFENDANT**:  When you say it's a yes or no question--

**THE COURT**:  You can explain it after you answer it.

**THE DEFENDANT**:  Okay.  Okay.  Yes.

**THE COURT**:  All right.

**THE DEFENDANT**:  All right.  Yes, it was my decision.

**THE COURT**:  Now, what's your explanation that you feel you need to give?

**THE DEFENDANT**:  That I really, I'm trying to understand in whole, in full-- it was actually in discussion-- you know still-- and I was misunderstanding, completely, of what actually what was happening, so was my family, but I know it was my decision, but I was really-- I really would like to understand things before I make decisions that could possibly affect my life, if that's okay with the court?

Defendant told the trial court that defense counsel explained the situation "in the time that we had, but I didn't understand because we didn't have no time [sic]."  The trial court asked defense counsel if he had "an opportunity to fully explain" what was going on to Defendant, and defense counsel responded:

**MR. WILLIS:**  I have.  Judge, and I did--

**THE DEFENDANT:**  I mean if we could--

**MR. WILLIS**:  It was rushed.  I'm telling you, Judge.  It was rushed.  I'm -- this is very uncomfortable for me and my client.  I really hate that we [are] in this position, Judge.  Like, this-- like my focus shifted.  I'm represent-- this man's life is on the line.  We got a jury waiting, and we [are] dealing with evidence at the last minute, Judge.

The State indicated its appreciation that the evidence could not be admitted at trial due to the late disclosure and said there was nothing in the evidence that "smells of anything that would've been helpful to the defense."  Defense counsel argued that the rules of discovery were not only important for trial purposes but were also used to adequately advise clients as to the evidence against them.

**THE COURT**:  That's why I'm offering you the mistrial.

**MS. GOTHREAUX [THE STATE]**:  And he can plead guilty at any time.

**MR. WILLIS**:  It still puts my client at a disadvantage because I believe we would have never been here.  If the evidence is so damaging the way the State says it is, we would never have been here if they would've turned over the evidence at a prompt time, in a timely fashion to me to get to my client so he can look at this case and--

**THE COURT**:  And if I grant the mistrial, we're right back where you would've been before.

**MS. GOTHREAUX**:  In a worse position because now I [have] a lot more evidence.

Following additional arguments by the State and defense counsel, the trial court asked:

**THE COURT**:  Stop.  Stop.  What's the end result of what you're arguing?  What is it you're asking me to do?  No, sir.

**THE DEFENDANT**:  Okay.  All right.

**THE COURT**:  I'm talking to your lawyer right now.

**THE DEFENDANT**:  Yes, sir.

**MR. WILLIS**:  Judge, I'm just making a record that we are in the middle of trial--

**THE COURT**:  What's the resolution you're asking for?

**MR. WILLIS**:  I'm not making a-- I'm making a record.  No resolution, Judge.

The State said defense counsel was trying to "have it both ways" and specified that the defense either had to move for a mistrial or proceed with trial.  The trial court agreed, proclaiming:  "We [are] either going forward, or you move for a mistrial."  The defense decided to proceed with trial "based on [Defendant] wanting to move forward[.]"  However, Defendant then stated:

**THE DEFENDANT**:  Like I was saying, my understanding of this is not in total.  Like, so my decision being-- is being made, still not understanding.  I wish I could understand is that, and this not-- I don't

even know if the-- I know what this is.  I know what it says, but I just, you know he was in the process of really explaining it to me, and I'm just-- I know what I'm asking for, a few more minutes to understand.

THE COURT:  We've been wasting a lot of minutes that could've resolved this, but. . . .

THE DEFENDANT:  I know, but I would ask [for] the time to understand it.  Okay.

MR. WILLIS:  No, keep saying what you have to say.  Make your record [be]cause. . . .

THE COURT:  Say your peace.  I'm going to let you say your peace.

THE DEFENDANT:  I'm just saying like-- like I don't wanna [sic] just keep saying . . . something that's been said already.  It's just, you know, I just wanna [sic] say it.  It's like . . . if it was submitted or whatever, we coulda [sic] had done [sic] looked into it.  He coulda [sic] explained it to me like, "Mr. Smith, this is what is going on.  This is what's happening."  I'm pretty sure there's another paper that supports this paper, what says like maybe the testing that was-- which was done on the cotton swab, there's a cotton swab.  So, if there's a cotton swab, obviously--

THE COURT:  They didn't test [anything].

THE DEFENDANT:  Okay.  Well, then that's the thing.

MS. GOTHREAUX:  He seems to understand it pretty well.

THE DEFENDANT:  How does this be hurtful [sic] to me?  How could she have the advantage if they didn't test anything?

. . . .

MR. WILLIS:  Judge, I-- he's moving forward because based on what the information that he has now--

THE DEFENDANT:  I would like to move forward.

MR. WILLIS:  He believes that that's . . . in his best interest.

THE COURT:  Okay.  All right.  Bring in the jury.  We're going to move forward.

The State rested its case, without admitting any further evidence, and the defense did not call any witnesses to testify. Defendant was found guilty on three of the four counts for which he was charged.

Courts have consistently held that defendants must contemporaneously object to alleged trial errors to preserve the issues for appellate review:

> Review of criminal trial errors on appeal has long been governed by the contemporaneous objection rule found in La. C. Cr. P. art. 841. *State v. Thomas*, 27,507 (La.App.2d Cir.12/6/95), 665 So.2d 629, *writ denied*, 96-0119 (La.4/8/96), 671 So.2d 333. The contemporaneous objection rule serves two related purposes. The first prevents a defendant from withholding an objection or alternative theory of defense to urge for the first time on appeal in the event of a conviction. In fairness, a defendant cannot simply watch the proceedings unfold and silently hope the trial court will commit error. Nor can a defendant adopt, as a matter of strategy, one approach at trial, and then, if that approach fails, argue a contrary or novel view on appeal. The second purpose is the promotion of judicial efficiency. Due to the fact that the defendant failed to object to the substance of [the deputy's] testimony, the defendant did not preserve the issue for appeal.

*State v. Cummings*, 46,038, pp. 16–17 (La.App. 2 Cir. 1/26/11), 57 So.3d 499, 507, *writ denied*, 11-341 (La. 6/17/11), 63 So.3d 1037. *See also State v. Thomas*, 17-526 (La.App. 3 Cir. 12/13/17), 258 So.3d 708.

This court has explained an exception to the contemporaneous objection rule related to structural errors:

> Generally, only errors that are structural may be reviewed in the absence of contemporaneous objection. *State v. Hongo*, 96-2060 (La.12/2/97), 706 So.2d 419. A structural error is one that, "by its very nature, impacts the entire framework of the trial from beginning to end, without reference to any other trial consideration." *State v. Langley*, 06-1041, pp. 12-13 (La.5/22/07), 958 So.2d 1160, 1168, *cert. denied*, 552 U.S. 1007, 128 S.Ct. 493, 169 L.Ed.2d 368 (2007).

*State v. Day*, 14-708, p. 4 (La.App. 3 Cir. 12/23/14), 158 So.3d 120, 125. The supreme court has discussed the limited number of recognized structural errors:

> A "structural" error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991), *reh'g denied*, May 20, 1991. The

United States Supreme Court has recognized structural errors only in a "very limited number of cases." *Johnson v. U.S.*, 520 U.S. 461, 468, 117 S.Ct. 1544, 1550, 137 L.Ed.2d 718 (1997), citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (a total deprivation of the right to counsel); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (lack of an impartial trial judge); *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (unlawful exclusion of grand jurors of defendant's race); *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (the right to self-representation at trial); *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (the right to a public trial); *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (erroneous reasonable-doubt instruction to jury).

*State v. Brown*, 18-1999, p. 18 (La. 9/30/21), 330 So.3d 199, 222 n.13, *cert. denied*, ___ U.S. ___, 142 S.Ct. 1702 (2022). In this case, Defendant was not totally deprived of counsel as contemplated by *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792 (1963), and he does not argue that the alleged error in his case was structural in nature. Thus, the exception to the contemporaneous rule in La.Code Crim.P. art. 841 for structural errors does not apply to this case.

Despite defense counsel stating that he was "making a record," he never objected to the trial court's ruling. The trial court specifically asked defense counsel what resolution he sought, and he responded: "I'm making a record. No resolution, Judge."

As the second circuit discussed in *Cummings*, 57 So.3d at 507, a defendant cannot "adopt, as a matter of strategy, one approach at trial, and then, if that approach fails, argue a contrary or novel view on appeal." In this case, the trial court mandated that Defendant either move for a mistrial, which the court said would be granted, or proceed with trial. Without objection, Defendant decided to proceed with trial. He now argues, following his conviction, that he was denied the right to assistance of counsel due to the trial court's order. We find the issue was not preserved for review due to the lack of a contemporaneous objection, especially when considering the purpose of La.Code Crim.P. art. 841.

In his second assignment of error, Defendant argues, in the alternative, that the trial court erred in denying his motion for new trial. Not only do we find Defendant failed to raise the alleged violation of his right to assistance of counsel in his motion for new trial as required by La.Code Crim.P. art. 852, but we also find Defendant's arguments lack merit.

In his written motion, Defendant specifically alleged:

> NOW INTO THIS HONORABLE COURT comes the defendant, Brandon J. Smith, by and through counsel of record in this cause, pursuant to Article 821 and Article 851 (1) of the Louisiana Code of Criminal Procedure, and for his Judgment of Acquittal or in the Alternative Motion for New Trial avers:
>
> I.
>
> The evidence contained in the record is insufficient as a matter of law to support the verdict of the jury finding the defendant guilty of Aggravated Assault with a Firearm, Aggravated Second Degree Battery, and Possession of a Firearm by a Convicted Felon. The evidence presented by the State, viewed in its best light, showed that there was insufficient evidence to support a conviction.
>
> II.
>
> In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Marshall*, 2004-3139 (La.11/29/06), 943 So.2d 362. Ultimately this case hinged upon the credibility of the complaining witness, Devin Asiegbu. Various portions of Ms. Asiegbu's testimony were inconsistent and not corroborated by physical evidence. Moreover, the accuser's testimony was internally contradicted and did not reconcile with other physical evidence. Thus, pursuant to Article 821, Ms. Asiegbu's testimony and other evidenced [sic] presented by the State, or the lack thereof, did not reasonably permit a finding of guilty.
>
> III.
>
> Alternatively, Defendant further asserts pursuant to Article 851 (1), he should be granted a new trial because the verdicts are contrary to the law and evidence for all the reasons stated above.

At the hearing on October 13, 2022, defense counsel presented arguments on

the claims set forth in his motion. Following the State's arguments, the trial court indicated it was prepared to rule, and the following colloquy ensued:

> **MR. WILLIS**: I have -- but I have one thing I would like to say, Your Honor, and it expands our -- our motion for a new trial.
>
> And I -- and I just want to make this for the record. Your Honor, we had a big mishap in terms of the late evidence that was provided by the State. And thinking about it on my own and speaking to colleagues about it the issue was the timing of the turning over of that evidence and then Mr. Smith having to make a decision to move forward.
>
> Now, me, I can hear Your Honor in my head saying, you had a choice. Mr. Smith had a choice to either move forward by going forward with the trial or Your Honor would grant Mr. Smith a mistrial. And so we moved forward based on the decision, the information we had, the small amount of time we had to make that decision. And, Your Honor, I would just like to expand my motion for a new trial, I'm sorry, [Ms. Gothreaux,] for not putting you on notice about that. I'm sure you will articulately response [sic] to this. However, Judge, I do want to expand my motion because I -- it really put Mr. Smith in a bad position and now here we are in -- and the issue mainly was, Your Honor, the small amount of time to assess everything that was coming at Mr. Smith at that particular time. Yes, he made a decision to move forward. That was the best advice we were able to come up with at that time, Your Honor, but at the same time, very, very uncomfortable with moving forward with not fully assessing that. I just wanted to make that clear and expand my motion and based on those grounds we would ask for a new trial as well.
>
> **MS. GOTHREAUX**: I will just respond by saying that --
>
> **MR. WILLIS**: We're not -- I'm sorry. And I would like to reference the argument for the record that I made at the time of the motion when we agreed to the items that were submitted late.

At the conclusion of the arguments, the trial court ruled as follows:

> **THE COURT**: But I [want] the record to be clear; I gave the defendant the opportunity to receive a mistrial at that time so they could go look at that evidence. They chose not to based upon I'm assuming their belief that that evidence would not have helped them. Don't know that. But I gave them the opportunity. They had it. I told them I would grant the mistrial, they didn't want the mistrial, they wanted to go forward.
>
> The motion for new trial and the motion for post-verdict judgment of acquittal is denied.

14

Defense counsel noted his objection for the record.

The standard of reviewing a trial court's ruling on a motion for new trial is as follows:

> The denial of a motion for a new trial is not subject to appellate or supervisory review except for error of law. La.Code Crim.P. art. 858. The decision on a motion for new trial rests within the sound discretion of the trial judge. We will not disturb this ruling on appeal absent a clear showing of abuse. The merits of such a motion must be viewed with extreme caution in the interest of preserving the finality of judgments. Generally, a motion for new trial will be denied unless injustice has been done. *See* La.Code Crim.P. art. 851; *State v. Home [Horne ]*, 28,327 (La.App.2d Cir. 8/21/96), 679 So.2d 953, 956, *writ denied*, 96-2345 (La.2/21/97), 688 So.2d 521.
>
> *State v. Austin*, 11-2150, p. 7 (La.App. 1 Cir. 6/8/12), 2012 WL 2061531 (unpublished opinion), *writ denied*, 12-1595 (La.2/8/13), 108 So.3d 77.

*State v. Pontiff*, 14-1049, pp. 16–17 (La.App. 3 Cir. 5/6/15), 166 So.3d 1120, 1132 (alteration in original), *writ denied*, 15-1107 (La. 10/28/16), 209 So.3d 94.

Louisiana Code of Criminal Procedure Article 851(B) provides five[3] specific grounds for a new trial on motion of the defendant:

(1) The verdict is contrary to the law and the evidence.

(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error.

(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.

(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment.

---

[3]There is a sixth ground in La.Code Crim.P. art. 851 which applies to defendants who were victims of human trafficking.

(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.

See *State v. Marx*, 14-332 (La.App. 4 Cir. 3/4/15), 163 So.3d 44, *writ denied*, 15-643 (La. 3/24/16), 190 So.3d 1195.

As discussed above, Defendant's written motion alleged a new trial should be granted because his guilty verdicts were contrary to the law and evidence; he did not allege any other grounds to support his motion. La.Code Crim.P. art. 851(B)(1). The situation regarding the late disclosure of evidence and circumstances resulting from the late disclosure was raised for the first time, post-trial, at the contradictory hearing. In brief to this court, Defendant claims that he "supplemented his written motion to include the issue of the limited time afforded to Mr. Smith to assess the ramifications of the late disclosure of evidence and make such an important decision thereafter." The record contains no such supplemental motion for new trial.

Louisiana Code of Criminal Procedure Article 852 mandates that a "motion for a new trial shall be in writing, shall state the grounds upon which it is based, and shall be tried contradictorily with the district attorney." An exception to that mandate is laid out in La.Code Crim.P. art. 856, which provides:

A motion for a new trial shall urge all grounds known and available to the defendant at the time of the filing of the motion. However, the court may permit the defendant to supplement his original motion by urging an additional ground, or may permit the defendant to file an additional motion for a new trial, prior to the court's ruling on the motion.

As discussed in *State v. Carter*, 13-94, pp. 14–15 (La.App. 5 Cir. 10/30/13), 128 So.3d 1108, 1117–18 (footnote omitted), *writ denied*, 13-2701 (La. 4/25/14), 138 So.3d 644, Defendant was required to specially urge all grounds in the motion for new trial which he filed or, with the trial court's permission, to supplement his motion or file a new motion:

In defendant's second assignment of error, he argues that the trial court erred in denying his motion for a new trial when defense counsel presented credible evidence that two jurors had fallen asleep during the proceedings. . . .

[Louisiana Code of Criminal Procedure Article] 852 mandates that a "motion for a new trial shall be in writing, shall state the grounds upon which it is based, and shall be tried contradictorily with the district attorney." Defendant's claim of sleeping jurors was not raised in his written motion for new trial, but rather was raised for the first time orally at the motion hearing. Because this claim was not properly raised in a written motion, we find no abuse of the trial court's discretion in denying defendant's motion for new trial. See *State v. Richoux*, 11-1112, pp. 11–12 (La.App. 5 Cir. 9/11/12), 101 So.3d 483, 490, *writ denied*, 12-2215 (La.4/1/13), 110 So.3d 139. In any event, even if we were to address the merits of this issue, we find no abuse of the trial court's discretion in denying defendant's motion for new trial.

Because Defendant in the present case did not properly raise this claim as a ground for new trial in his written motion, we find he failed to follow the proper procedure for raising the claim; therefore, the trial court did not abuse its discretion in denying Defendant's motion for new trial. *See, e.g., State v. Polly*, 15-370 (La.App. 5 Cir. 11/19/15), 179 So.3d 892. However, even if we were to address the merits of the claim, we find Defendant's contention lacks merit.

Louisiana Code of Criminal Procedure Article 851(A) (emphasis added) provides in relevant part that "[t]he motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case *the motion shall be denied*, no matter upon what allegations it is grounded." After reviewing the record and arguments, we find no injustice has been proven in this case.

"The Sixth Amendment to the [United States] Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.'" *State v. Reeves,* 06-2419, p. 35 (La. 5/5/09), 11 So.3d 1031, 1055 (first alteration added), *cert. denied*, 558 U.S. 1031, 130 S.Ct. 637 (2009). Similarly, La.Const. art. 1, § 13 ensures a criminal defendant the right to the

assistance of counsel: "At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment." The Supreme Court has articulated the importance of the right to counsel:

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him.

*Powell v. Alabama*, 287 U.S. 45, 68–69, 53 S.Ct. 55, 64 (1932). Though both the federal and state constitutions provide that defendants have the right to assistance of counsel, the right is not absolute, and a defendant cannot manipulate that right to thwart the administration of justice. *See, e.g., State v. Jones*, 376 So.2d 125 (La.1979); *State v. Major*, 22-387 (La. 3/9/22), 333 So.3d 1231.

In brief to this court, Defendant contends that "[t]he trial court erred when it required him to decide whether to move for a mistrial or proceed with trial without granting him the requested additional time to consult with and be advised by his counsel prior to the decision." Defendant relies on several cases from the United States Supreme Court to support his argument.

In *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330 (1976), the Supreme Court considered whether a trial court's order prohibiting the defendant from consulting with his attorney during an overnight court recess, which occurred between the defendant's direct examination and cross-examination, violated his Sixth Amendment right to counsel. The Supreme Court held that the trial court's order impinged upon the defendant's right to the assistance of counsel. The Supreme

18

Court concluded that such an order deprives the defendant of the "guiding hand of counsel" at a critical point in the proceeding. *Id.* at 89 (quoting *Powell*, 287 U.S. at 69). In so holding, the Supreme Court reversed the Fifth Circuit's decision holding "that petitioner's failure to claim any prejudice resulting from his inability to consult with counsel during one evening of the trial was fatal to his appeal." *Id.* at 86.

In *Perry v. Leeke,* 488 U.S. 272, 109 S.Ct. 594 (1989), the Supreme Court declined to extend the *Geders* holding when it found that a trial court did not violate the defendant's Sixth Amendment right to assistance of counsel by directing him not to consult with his attorney during a fifteen-minute recess occurring between his direct examination and cross-examination in the absence of a showing of prejudice.

As the State observes in brief, *Geders*, 425 U.S. 80, and *Perry*, 488 U.S. 272, involved instances where the defendants were not allowed to consult with their attorneys *during their testimonies*, which is different from the circumstance in the present case. The Supreme Court cases are further distinguishable inasmuch as there were explicit prohibitions against communication between the defendants and their attorneys by the trial courts.

Here, there was a recess during which Defendant and defense counsel were permitted to talk with one another. This is not a circumstance in which a defendant alleges a complete denial of access to his counsel but, rather, he alleges there was insufficient time, during trial, for him to consult with his counsel. Neither Defendant nor the State discuss cases which are factually similar to the instant one, and our research has revealed none.

The State contends that because Defendant was not actually or constructively denied the right to assistance of counsel, according to the State, he must prove prejudice. The State asserts that defense counsel benefitted from the discovery of evidence which corroborated Ms. Asiegbu's testimony and the fact that such

19

evidence was not admitted at trial by arguing in closing statements that the State failed to present important evidence, such as the napkins and phones. Additionally, the State alleges that Defendant's pleas for additional time during the in-chambers conference were a delay tactic.

The record does not reflect when, during the hour lunch recess, defense counsel and Defendant became aware of the evidence. Despite his arguments to this court that he was denied adequate time to consult with his attorney, the record reflects that defense counsel told the trial court that he explained the circumstances and ramifications of the situation, albeit in a rushed manner, and Defendant expressly indicated that he wished to proceed with trial. While the colloquies show that Defendant might not have fully understood the legal technicalities, he never asked the trial court to allow him to further consult with his attorney and his attorney never asked the trial court to allow him to further advise his client. Defendant's argument presumes that had he further consulted with counsel, he would have moved for a mistrial and chosen not to proceed with trial, as those were the only options before him. Considering that Defendant has not established there was a violation of his right to assistance of counsel, nor has he established that an injustice has been done, we find Defendant is not entitled to relief on his claim.

## DECREE

Defendant's convictions and sentences are affirmed.

**AFFIRMED.**